CHRISTOPHER J. LANGLEY, State Bar No. 258851
chris@slclawoffice.com
Shioda Langley & Chang, LLP
1063 E. Las Tunas Dr.
San Gabriel, CA 91776
Telephone:(951)383-3388
Facsimile:(877) 483-4434

Attorneys for Debtor and Debtor-In-Possession,
Alpinebay, Inc

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA BARBARA DIVISION

| | |
|---|---|
| In re<br><br>ALPINEBAY, INC, a California corporation,<br><br>      Debtor and<br>      Debtor-in-Possession. | Case No. 9:24-bk-11386-RC__<br><br>Chapter 11<br><br>NOTICE OF MOTION AND MOTION FOR ORDER APPROVING COMPROMISE WITH PROFORM FINISHING PRODUCTS, LLC; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF WILLIAM HO IN SUPPORT THEREOF<br><br>[No Hearing unless requested in writing] |

**TO THE U.S. TRUSTEE AND ALL PARTIES ENTITLED TO NOTICE, PLEASE TAKE NOTICE THAT:**

Movant(s) Alpinebay, Inc., as debtor and debtor in possession, filed a motion or application (Motion) entitled Motion for Order Approving Compromise with ProForm Finishing Products, LLC f/k/a New NGC, Inc. d/b/a National Gypsum Company and Gold Bond Building Products, LLC pursuant to Fed. R. Bankr. P. 9019.

Movant(s) is requesting that the court grant the Motion without a hearing as provided for in LBR 9013-1(o), unless a party in interest timely files and serves a written opposition to the Motion and requests a hearing.

Pursuant to LBR 9013-1(o), any party who opposes the Motion may request a hearing on the

1

Doc ID: 3e92c47eb98ce7ea556710287fc5058e4c11061f

Motion. The deadline to file and serve a written opposition and request for a hearing is 14 days after the date of service of this notice, plus 3 additional days if you were served by mail or pursuant to F.R.Civ.P. 5(b)(2)(D) or (F). If you timely file and serve a written opposition and request for a hearing, movant will file and serve a notice of hearing at least 14 days in advance of the hearing. [LBR 9013-1(o)(4)]. If you fail to comply with this deadline:

    (1) Movant will file a declaration to indicate: (1) the Motion was properly served, (2) the response period elapsed, and (3) no party filed and served a written opposition and request for a hearing within 14 days after the date of service of the notice [LBR 9013-1(o)(3)];

    (2) Movant will lodge an order that the court may use to grant the Motion; and

    (3) The court may treat your failure as a waiver of your right to oppose the Motion and may grant the Motion without further hearing and notice. [LBR 9013-1(h)]

DATED:  September 3, 2025                SHIODA LANGLEY & CHANG LLP

By:_____
CHRISTOPHER J. LANGLEY
Attorneys for Debtor-In-Possession,
Alpinebay, Inc

2

Doc ID: 3e92c47eb98ce7ea556710287fc5058e4c11061f

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The debtor and debtor in possession Alpinebay, Inc. (the "Debtor"), hereby respectfully moves the Court for an Order approving the Settlement Agreement with ProForm Finishing Products, LLC f/k/a New NGC, Inc. d/b/a National Gypsum Company and Gold Bond Building Products LLC (collectively,"NGC"), a true and correct copy of which is attached hereto as Exhibit 1.

In this bankruptcy case, NGC has filed Claim No. 3 asserting a general unsecured claim in the sum of $4,599,088.12, consisting of $4,500,000.00 under a federal court consent judgment and $99,088.12 in pre-petition attorneys' fees arising from trademark litigation and contempt proceedings. Following extensive good faith settlement negotiations, the Debtor and NGC were able to reach a consensual resolution that provides for a cash payment of only $400,000 and other non-monetary compensation to NGC to resolve its $4.6 million claim. This represents a reduction of over $4.2 million in NGC's claim, freeing up significant value that can be used to support the Debtor's business operations and benefit all creditors.

Under prevailing Ninth Circuit precedent, the Court's role in approving a compromise under Bankruptcy Rule 9019 is not to engage in an "exhaustive investigation or a mini-trial on the merits;" rather, the Court only needs to find that the settlement was negotiated in good faith and is "reasonable, fair and equitable." *In re A & C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986). As demonstrated below, the NGC Settlement Agreement satisfies this legal threshold and advances the goals of avoiding unnecessary expenses and burdens associated with contested matters, all of which benefits the estate and its creditors.

## II. FACTUAL BACKGROUND

### A. EVENTS LEADING TO THE DEBTOR'S BANKRUPTCY

The Debtor is a California corporation engaged in the distribution of building products, including wall niches, waterproofing materials, and related construction supplies. The Debtor filed its Chapter 11 petition on December 6, 2024, primarily due to severe cash flow constraints stemming from substantial legal obligations arising from federal trademark litigation with NGC.

3

The underlying litigation arose from NGC's claims that Debtor infringed NGC's trademark rights in the color purple and the word "PURPLE" for building products. Following a jury trial in federal court, NGC obtained a jury verdict in the amount of $5,500,000 against the Debtor in May 2023. The parties subsequently entered into a Stipulated Permanent Injunction (the "Permanent Injunction"), executed a consent judgment to be filed upon any violation thereof, and final judgment was entered. However, in October 2024, the federal district court found that Debtor had violated the terms of the Permanent Injunction, making the consent judgment enforceable. The court also awarded NGC $99,088.12 in attorneys' fees and costs for contempt proceedings. After accounting for prior payments made by Debtor, NGC's enforceable claim totaled $4,599,088.12 as of the petition date.

### B. THE NGC SETTLEMENT AGREEMENT

NGC filed Claim No. 3 in this bankruptcy case asserting a general unsecured claim in the amount of $4,599,088.12, consisting of: (i) $4,500,000.00 under the federal court consent judgment (representing the original $5,500,000 jury award less $1,000,000 previously paid by Debtor), and (ii) $99,088.12 in pre-petition attorneys' fees and costs awarded by the district court in connection with contempt proceedings. The Debtor investigated NGC's claim and engaged in extensive good faith settlement negotiations with NGC to consensually resolve this dispute.

After months of settlement discussions, the parties reached a consensual resolution. Under the Settlement Agreement, the Debtor will pay NGC the sum of $400,000 within sixty (60) days of court approval, representing only 8.7% of NGC's asserted claim. This settlement provides for a reduction of over $4.2 million in NGC's claim amount, which translates into significant cost savings to the estate and preserves value for all creditors.

The Settlement Agreement also includes important ongoing compliance provisions, including:

- Debtor's agreement to comply with the existing permanent injunction regarding use of purple color and "PURPLE" word marks;
- Individual liability provisions for the Debtor's principals, requiring their compliance with the existing permanent injunction;

4

Doc ID: 3e92c47eb98ce7ea556710287fc5058e4c11061f

• Notice and cure provisions for any alleged future violations;

• Debtor's and the individual principals' execution and delivery of consent judgments to NGC, which may be entered after a default of, and failure to cure, the Settlement Agreement and Permanent Injunction;

• Mutual releases upon satisfaction of the settlement terms; and

• Dismissal of this bankruptcy proceeding.

**III. LEGAL ARGUMENT**

**A. LEGAL STANDARD FOR APPROVING A SETTLEMENT UNDER BANKRUPTCY RULE 9019(a)**

Bankruptcy Rule 9019(a) provides: "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." The purpose of a compromise agreement is to allow the trustee and creditors to avoid the expenses and burdens associated with litigating contested claims. The law favors compromise over litigation for its own sake.

The Court's role in approving any settlement under Rule 9019 is limited. Rather than an exhaustive investigation or a mini-trial on the merits, the Court need only find that the settlement was negotiated in good faith and is reasonable, fair and equitable. The Court's proper role is to "canvas the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *In re A & C Properties*, 784 F.2d at 1381

The Ninth Circuit has identified the following factors for consideration in determining whether a proposed settlement agreement is reasonable, fair, and equitable:

(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises. *In re A & C Properties*, 784 F.2d at 1381

**B. THE NGC SETTLEMENT AGREEMENT CONSTITUTES A REASONABLE, FAIR AND EQUITABLE RESOLUTION**

The Debtor has conducted a thorough analysis of the NGC claim and firmly believes that the Settlement Agreement is in the best interest of the estate and satisfies the legal standards for a

Doc ID: 3e92c47eb98ce7ea556710287fc5058e4c11061f

"reasonable, fair and equitable" compromise.

### 1. Probability of Success in Challenging the Claim

While the Debtor investigated the NGC claim thoroughly, the strength of NGC's position presented significant challenges. The claim is based on a federal court consent judgment of $4,500,000 (representing the original $5,500,000 jury award less $1,000,000 previously paid) plus $99,088.12 in court-awarded attorneys' fees for contempt proceedings. The underlying federal court found in October 2024 that Debtor had violated the settlement agreement, making the consent judgment enforceable. Challenging such court determinations would require extensive litigation with uncertain prospects for meaningful reduction.

### 2. Difficulties in Collection and Liquidation Value

The NGC claim represents the single largest unsecured claim in the case. In a liquidation scenario, general unsecured creditors would receive minimal or no recovery. The settlement preserves substantial value that would otherwise be consumed by the NGC claim, allowing for better recoveries to all creditors.

### 3. Complexity and Expense of Litigation

Any challenge to the NGC claim would involve complex trademark law issues, damages calculations, and extensive discovery. The costs of such litigation could easily exceed hundreds of thousands of dollars in legal fees and expert witness costs, funds that the estate cannot afford. Moreover, such litigation would delay the administration of the case.

### 4. Paramount Interest of Creditors

The settlement serves the paramount interests of all creditors. By paying NGC $400,000 for its claim of $4,599,088.12, the settlement preserves over $4.2 million in value for the estate. This dramatic reduction of approximately 91.3% benefits all stakeholders and enhances the prospects for the Debtor to successfully operate after the Settlement Agreement is consummated and this bankruptcy proceeding is dismissed.

The settlement also provides certainty and finality, allowing the Debtor to focus on its business operations rather than protracted litigation. The ongoing compliance provisions protect NGC's legitimate interests while allowing the Debtor to continue operating its business.

6

Doc ID: 3e92c47eb98ce7ea556710287fc5058e4c11061f

**IV. CONCLUSION**

The Debtor has carefully considered its options regarding the NGC claim and negotiated with NGC in good faith. After extensive discussions, the Debtor chose a path of compromise instead of the risk, uncertainty, expense and delay of litigation.

The Settlement Agreement represents an outstanding result for the estate – paying only $400,000 for a $4.6 million claim while providing certainty and finality. This compromise is reasonable, fair and equitable and should be approved.

For these reasons, the Debtor respectfully requests that the Court enter an order:

(a) Granting this Motion in its entirety; (b) Approving the NGC Settlement Agreement attached hereto as Exhibit 1; (c) Authorizing and empowering the Debtor to take all steps necessary and appropriate to consummate the Settlement Agreement; (d) granting NGC relief from the automatic stay as necessary to consummate and implement the Settlement Agreement; and (e) For such other and further relief as the Court deems just and proper in the circumstances.

DATED:  September 3, 2025                          SHIODA LANGLEY & CHANG LLP


                                                  By:  /s/Christopher J. Langley
                                                       CHRISTOPHER J. LANGLEY
                                                       Attorneys for Debtor-In-Possession,
                                                       Alpinebay, Inc

7

Doc ID: 3e92c47eb98ce7ea556710287fc5058e4c11061f

## **DECLARATION OF WILLIAM HO**

I, William Ho, declare as follows:

1.      I am the General Manager of the Debtor, Alpinebay, Inc. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would competently testify to such facts under oath.

2.      I submit this Declaration in support of the Debtor's Motion to Approve Compromise with ProForm Finishing Products, LLC f/k/a New NGC, Inc. d/b/a National Gypsum Company and Gold Bond Building Products, LLC ("Motion"). All capitalized terms used herein but not defined shall have the same meaning as ascribed to them in the Motion.

3.      Over the course of the past several months, I have been actively involved in the settlement negotiations with NGC. The NGC claim of $4,599,088.12 represents the largest unsecured claim in our bankruptcy case and arose from federal trademark litigation that resulted in an adverse jury verdict, followed by a district court finding that we violated the settlement agreement, making a consent judgment enforceable against the company.

4.      I have determined that it is in the best interest of the Debtor and its estate to settle this dispute with NGC and avoid the risks, costs, and delays associated with challenging this claim. The federal court judgment, including both the underlying jury verdict and the subsequent contempt findings, created substantial obligations that would be difficult and expensive to challenge successfully.

5.      I have reviewed the Settlement Agreement that is attached as Exhibit 1. I believe that this settlement is fair and reasonable and provides tremendous value to the estate. Reducing NGC's claim from $4,599,088.12 to $400,000 preserves over $4.2 million for the benefit of all creditors and the reorganized company.

6.      The Settlement Agreement includes comprehensive provisions to ensure ongoing compliance with the federal court's Permanent Injunction while providing reasonable protection for the Debtor. The agreement establishes clear notice and cure procedures (30 days for standard violations, 60 days for historical violations) and provides helpful color guidance confirming that green, yellow, and orange are not considered infringing colors.

Doc ID: 3e92c47eb98ce7ea556710287fc5058e4c11061f

7.     The Settlement Agreement provides a comprehensive framework for ongoing compliance with the federal court's trademark restrictions while eliminating the substantial claim against the estate. The notice and cure provisions are reasonable and provide adequate opportunity to address any alleged violations.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Executed on this 3rd day of September, 2025, at Stockton, California.

*William Ho*

William Ho
Declarant

# SETTLEMENT AGREEMENT

This Settlement Agreement (the "Settlement Agreement") is entered into between the debtor Alpinebay Inc. ("Debtor"), the Debtor's principals, Anne Xiu Ying Ho, William Huor Lam, and William Ho (individually a "Debtor's Principal" and collectively, the "Debtor's Principals"), and creditors ProForm Finishing Products, LLC f/k/a New NGC, Inc. d/b/a National Gypsum Company and Gold Bond Building Products, LLC (collectively, "NGC"). The foregoing parties (each a "Party" and collectively the "Parties") hereby agree as follows:

## RECITALS

WHEREAS, NGC and Debtor were parties to litigation in the U.S. District Court for the Northern District of Illinois, Case No. 1:19-CV-03978 (the "Federal Litigation");

WHEREAS, Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on December 6, 2024, in Case No. 9:24-bk-11386-RC (the "Bankruptcy Case");

WHEREAS, a Stipulated Permanent Injunction and Final Judgment was entered in the Federal Litigation (the "Permanent Injunction"), which, as more fully set forth in the Permanent Injunction, prohibited Debtor, its officers, agents, servants, employees and attorneys from using the color purple, in any shade, or the word "PURPLE", in any format, case or spelling, on or in connection with the sale, distribution, or advertising of any building products in the United States or its territories, and a true and correct copy of the Permanent Injunction is attached hereto as Exhibit A;

WHEREAS, after the court in the Federal Litigation held that Debtor had violated the terms of the Permanent Injunction, NGC sought to enter a consent judgment against Debtor in the amount of $5,500,000 (less the amounts previously paid by Debtor), but Debtor's bankruptcy filing stayed such district court action (the "Federal Consent Judgment");

WHEREAS, NGC was awarded attorneys' fees and costs in the amount of $99,088.12 in connection with contempt proceedings;

WHEREAS, NGC filed a proof of claim in the Bankruptcy Case in the total amount of $4,599,088.12 based on the Federal Consent Judgment and attorneys' fees and costs;

WHEREAS, the Parties desire to resolve all disputes and allow for an orderly dismissal of the Bankruptcy Case, subject to the terms of this Settlement Agreement;

NOW, THEREFORE, in consideration of the mutual covenants contained herein, the Parties agree as follows:

## 1. BANKRUPTCY COURT ORDERS AND CONDITIONS PRECEDENT

Doc ID: 2a12dba7277259538f689a97d2a3017ab9d46623

Docusign Envelope ID: AF20BD25-57B6-4B65-B0F3-1E919628A596

This Settlement Agreement is subject to and conditioned upon the entry of a final and non-appealable order in the Bankruptcy Case approving this Settlement Agreement pursuant to Fed. R. Bankr. P. 9019 (the "Approval Order"). Unless and until this condition is satisfied, this Settlement Agreement shall have no force and effect and the Parties' rights are expressly preserved.  Within five (5) days after the full execution of this Settlement Agreement, the Debtor shall file in the Bankruptcy Case a motion, in form and substance reasonably acceptable to NGC, for approval of this Settlement Agreement and the transactions contemplated herein.

# 2. SETTLEMENT PAYMENT AND CLAIM RESOLUTION

## 2.1 NGC Claim

NGC's Proof of Claim asserts a general unsecured claim in the amount of $4,599,088.12 (the "NGC Claim") based on the Federal Consent Judgment and attorneys' fees and costs awarded in connection with contempt proceedings in the Federal Litigation.

## 2.2 Settlement Payment

In full satisfaction of the NGC Claim, Debtor shall pay NGC the sum of Four Hundred Thousand Dollars ($400,000) (the "Settlement Payment") no later than November 24, 2025. The Settlement Payment shall be paid by wire transfer to NGC's designated account as specified in writing.

## 2.3 Satisfaction of Claim

Upon payment of the Settlement Payment and continued compliance with the terms of this Settlement Agreement and the Permanent Injunction, the NGC Claim shall be deemed satisfied and discharged in full. Any breach of this Settlement Agreement or the Permanent Injunction that is not cured within the applicable cure periods set forth herein shall reinstate NGC's rights under the NGC Claim and render the satisfaction and discharge void.

# 3. PERMANENT INJUNCTION COMPLIANCE AND ENFORCEMENT

## 3.1 Continuing Effect of Permanent Injunction

The Parties acknowledge and agree that the Permanent Injunction entered in the Federal Litigation remains in full force and effect and continues to bind Debtor, its officers, agents, servants, employees and attorneys. Each of the Debtor's Principals hereby agrees to be individually bound by the terms of the Permanent Injunction, including, without limitation, the prohibition on use of the color purple, in any shade, or the word "PURPLE" in any format, case, or spelling, on or in connection with the sale, offering for sale, distribution, or advertising of any building product in the United States or its territories.

Doc ID: 2a12dba7277259538f689a97d2a3017ab9d46623

## 3.2 Corporate Consent Judgment

Debtor hereby agrees to execute a consent judgment in favor of NGC in the amount of Four Million One Hundred Thousand Dollars ($4,100,000) (the "Corporate Consent Judgment"). The Corporate Consent Judgment may be filed by NGC in the United States District Court for the Northern District of Illinois only upon a breach of the Permanent Injunction by Debtor or the Debtor's Principals that is not cured within the applicable cure period set forth herein.  A true and correct copy of the Corporate Consent Judgment is attached hereto as Exhibit B.  For the avoidance of doubt, the amount of the Corporate Consent Judgment shall establish the damages for a single breach of the Permanent Injunction that is not cured within the applicable cure period set forth herein.  If, after entry of the Corporate Consent Judgment, Debtor breaches the Permanent Injunction and fails to cure such breach within the applicable cure period set forth herein, NGC shall be entitled to demonstrate and recover from Debtor any and all additional damages caused by such additional breach(es) of the Permanent Injunction.

## 3.3 Individual Consent Judgments

Each of the Debtor's Principals hereby agrees to execute an individual consent judgment (collectively, the "Individual Consent Judgments") in favor of NGC for the total amount of One Million Dollars ($1,000,000) (the "Individual Consent Judgment Collective Limit"). The Individual Consent Judgments may be filed by NGC in the United States District Court for the Northern District of Illinois only upon a breach of the Permanent Injunction by the Debtor or any of the Debtor's Principals that is not cured within the applicable cure period set forth herein.  For the avoidance of doubt, once NGC obtains a total of one million dollars ($1,000,000.00) from any Debtor's Principal or across multiple/all of Debtor's Principals, all of the Individual Consent Judgments shall be fully satisfied, and NGC shall take no further actions to collect under the Individual Consent Judgments.  By way of example, if NGC obtains $700,000 from one of Debtor's Principals and $300,000 from another of Debtor's Principals, all three Individual Consent Judgments shall be fully satisfied, and Debtor's Principals shall not be liable to NGC in any further amounts related to the Individual Consent Judgments.  Nothing herein shall limit or preclude the Debtor's Principals from seeking a right of contribution against the other Debtor's Principals related to any disproportional amounts that NCG collects under the Individual Consent Judgments. True and correct copies of the Individual Consent Judgments are attached hereto as Exhibits C–E.  For the avoidance of doubt, the amount of the Individual Consent Judgment Collective Limit shall limit the damages for a single breach of the Permanent Injunction that is not cured within the applicable cure period set forth herein.  If, after entry of the Individual Consent Judgments, a Debtor's Principal breaches the Permanent Injunction and fails to cure such breach within the applicable cure period set forth herein, NGC shall be entitled to demonstrate and recover from such Debtor's Principal any and all additional damages caused by such additional breach(es) of the Permanent Injunction.

# 4. NOTICE AND CURE PROVISIONS

## 4.1 Notice of Alleged Breach

Docusign Envelope ID: AF20BD25-57B6-4B65-B0F3-1F919628A596

In the event NGC believes there has been a breach of the Permanent Injunction, NGC shall provide written notice (a "Breach Notice") to Debtor and the Debtor's Principals, delivered as set forth in Section 11 herein, specifying in reasonable detail the nature of the alleged breach.

## 4.2 Cure Periods

Following delivery of a Breach Notice:

**(a) Standard Violations**: For violations occurring after the effective date of this Settlement Agreement, Debtor and/or the applicable Debtor's Principal(s) shall have thirty (30) days from receipt of the Breach Notice to cure the alleged breach.

**(b) Historical Violations**: For violations that occurred prior to the effective date of this Settlement Agreement but are discovered thereafter, Debtor and/or the applicable Debtor's Principal(s) shall have sixty (60) days from receipt of the Breach Notice to cure the alleged breach.

**(c) Cure:** For purposes of this Agreement, a breach shall be deemed "cured" if, within the applicable cure period, the conduct or omission giving rise to the breach has ceased or been remedied in all respects, and the Debtor has provided written notice to NGC describing the actions taken to cure the breach.

## 4.3 Enforcement Following Failure to Cure

NGC may file the applicable consent judgment(s) only if the alleged breach is not cured within the applicable cure period set forth above.

# 5. INDIVIDUAL LIABILITY PROVISIONS

## 5.1 Scope of Individual Liability

Each Debtor's Principal shall be subject to joint and several liability under the Individual Consent Judgments up to the Individual Liability Limit for a single violation of the Permanent Injunction occurring before the end of the Tail Period (as defined below).  To the extent a Debtor's Principal breaches the Permanent Injunction after entry of the Individual Consent Judgment is entered, such Debtor's Principal shall be subject to such additional liability caused by any and all additional breaches of the Permanent Injunction.

## 5.2 Liability Following Departure

Upon a Debtor's Principal's Complete Departure from Debtor (meaning cessation of all direct or indirect employment, equity holdings, consulting, independent contracting, or other business relationships with Debtor):

Doc ID: 2a12dba7277259538f689a97d2a3017ab9d46623

Docusign Envelope ID: AF20BD25-57B6-4B65-B0F3-1F919628A596

**(a) Tail Period**: Such Debtor's Principal shall remain subject to joint and several liability for violations of the Permanent Injunction occurring during the twenty-four (24) month period following such Complete Departure (the "Tail Period").

**(b) Post-Tail Period**: After expiration of the Tail Period for such Debtor's Principal, and provided such Debtor's Principal's Complete Departure is continuing, such Debtor's Principal shall be liable only for violations of the Permanent Injunction caused by his or her own individual conduct.

### 5.3 Individual Liability for Own Conduct

Notwithstanding anything herein to the contrary, each Debtor's Principal shall remain individually liable for any violations of the Permanent Injunction caused by his or her own conduct, including in connection with any future business endeavors, without regard to departure from Debtor or expiration of any Tail Period.

# 6. COLOR GUIDANCE FOR COMPLIANCE

For purposes of compliance with the Permanent Injunction and to provide guidance for future product development, the Parties agree that the colors green, yellow, and orange are not purple or shades of purple within the meaning of the Permanent Injunction. NGC makes no representations regarding other colors, and the Parties acknowledge that determinations regarding shades of blues, reds, and other colors shall be made on a case-by-case basis in accordance with the terms of the Permanent Injunction.

# 7. CURRENT COMPLIANCE REPRESENTATION

NGC represents that, based on its current knowledge and understanding of Debtor's product offerings as represented to the bankruptcy court and based on information available to NGC as of the date of this Settlement Agreement, NGC is not aware of any current violations of the Permanent Injunction by Debtor or the Debtor's Principals.

# 8. MUTUAL RELEASES

### 8.1 NGC Release

Effective upon NGC's receipt of the Settlement Payment, NGC, on behalf of itself, its successors and assigns, hereby releases and discharges Debtor and the Debtor's Principals from any and all claims, damages, liabilities, obligations, and causes of action arising out of or relating to the NGC Claim and the Federal Litigation, except for:

(a) the ongoing obligations under this Settlement Agreement; (b) the obligations under the Permanent Injunction; and (c) any claims for breach of this Settlement Agreement, including, without limitation, the filing of the Corporate Consent Judgment and the Individual Consent Judgment.

Doc ID: 2a12dba7277259538f689a97d2a3017ab9d46623

**8.2 Debtor and Debtor's Principals Release**

Effective upon entry of the Approval Order, Debtor and the Debtor's Principals, on behalf of themselves, their successors and assigns, hereby release and discharge NGC and its affiliates, officers, directors, employees, agents, and attorneys from any and all claims, damages, liabilities, obligations, and causes of action arising out of or relating to the Federal Litigation, the NGC Claim, and the Bankruptcy Case, except for:

(a) NGC's ongoing obligations under this Settlement Agreement; and (b) any claims for breach of this Settlement Agreement.

# 9. JURISDICTION AND VENUE

## 9.1 Bankruptcy Court Jurisdiction

The United States Bankruptcy Court for the Central District of California shall retain jurisdiction to enforce the terms of this Settlement Agreement until entry of the Dismissal Order.

## 9.2 Post-Dismissal Jurisdiction

Following entry of the Dismissal Order, the United States District Court for the Northern District of Illinois shall have exclusive jurisdiction over any disputes arising under this Settlement Agreement, including enforcement of the consent judgments and interpretation of the Permanent Injunction, provided that, after entry of a consent judgment, NGC may register and enforce such judgment in any court of competent jurisdiction.

## 9.3  Dismissal Order

Within five (5) days after entry of the Approval Order, the Debtor shall move to dismiss the Bankruptcy Case.

# 10. SECTION 1542 WAIVER

The Parties each acknowledge that there is a risk that they will subsequently discover facts or claims that were unknown or unsuspected on the effective date of this Settlement Agreement. The Parties each hereby expressly, voluntarily, and knowingly waive and relinquish all rights and benefits under section 1542 of the California Civil Code and any similar statute, rule, or legal doctrine in any jurisdiction, which provides:

"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

# 11. NOTICE PROVISIONS

All notices, demands, requests, consents, approvals, and other communications required or permitted hereunder shall be in writing and shall be deemed given when delivered via email and Federal Express (or equivalent overnight delivery service) with confirmation of delivery to:

**For Debtor:**

Anne Xiuying Ho
1668 El Pinal Drive
Stockton, CA 95205
Email: anne@alpinebay.com

**For Debtor's Principals:**
Anne Xiuying Ho
1668 El Pinal Drive
Stockton, CA 95205
Email: anne@alpinebay.com

William Ho
1668 El Pinal Drive
Stockton, CA 95205
Email: will@alpinebay.com

William Huor Lam
1668 El Pinal Drive
Stockton, CA 95205
Email: william@alpinebay.com

with a copy to:

**For Debtor and Debtor's Principals:**
Christopher J. Langley
chris@slclawoffice.com

**For NGC:**
Attention: Heyward H. Bouknight
2001 Rexford Road
Charlotte, North Carolina 28211
HeywardB@NationalGypsum.com

**With a copy to:**
Andrew W.J. Tarr
atarr@robinsonbradshaw.com

and

legal@nationalgypsum.com

Docusign Envelope ID: AF20BD25-57B6-4B65-B0F3-1F919628A596

The foregoing addresses may be changed by a party upon ten (10) days' written notice given to the other party. The refusal of any party to accept delivery or the inability to deliver because of changed address of which no notice was given shall be deemed the equivalent of receipt. Notices may be given on behalf of any party by its legal counsel.

# 12. GENERAL PROVISIONS

### 12.1 Entire Agreement

This Settlement Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof and supersedes all prior negotiations, representations, understandings, and agreements relating to such subject matter.

### 12.2 Amendment

This Settlement Agreement may be modified, changed, or amended only by a written instrument signed by all Parties.

### 12.3 Governing Law

This Settlement Agreement shall be governed by and construed in accordance with the laws of the State of California, without regard to its conflict of laws provisions.

### 12.4 Counterparts and Electronic Signatures

This Settlement Agreement may be executed in counterparts, each of which shall be deemed an original, and all of which together shall constitute one agreement. Electronic signatures shall have the same effect as original signatures.

### 12.5 No Admission of Liability

This Settlement Agreement shall not be construed as an admission of liability, fault, or wrongdoing by any Party.

### 12.6 Severability

If any provision of this Settlement Agreement is held to be invalid or unenforceable, the remaining provisions shall continue in full force and effect.

### 12.7 Authority

Each Party represents and warrants that the person executing this Settlement Agreement on its behalf has full authority to do so and to bind such Party to the terms hereof.

### 12.8  Further Assurances and Agreement to Cooperate

Doc ID: 2a12dba7277259538f689a97d2a3017ab9d46623

Docusign Envelope ID: AF20BD25-57B6-4B65-B0F3-1F919628A596

Upon the terms and subject to the conditions set forth in this Settlement Agreement, the Parties shall cooperate with each other and use their respective reasonable best efforts to (a) take or cause to be taken all actions reasonably necessary or advisable on its part under this Settlement Agreement to consummate the transactions promptly, (b) execute, acknowledge and deliver in proper form any further documents, certificates, agreements and other writings, and take such other action as such other party may reasonably require, in order to effectively carry out the intent of the transactions, and (c) not to take any action before the closing that would reasonably be expected to prevent, materially impair or materially delay the consummation of the transaction.

## 12.9  Successors and Assigns

Each and every covenant and agreement contained in this Settlement Agreement shall extend to and be binding upon the respective successors, heirs, administrators, executors and permitted assigns of the parties hereto.

## 12.10  Representations, Warranties and Covenants of the Parties.

Each Party represents, covenants, and warrants unto the others that it (a) has read and understands fully the terms of this Settlement Agreement and the consequences of the execution and delivery of this Settlement Agreement, (b) throughout the negotiation, preparation and execution of this Settlement Agreement, has been afforded an opportunity to have this Settlement Agreement reviewed by, and to discuss this Settlement Agreement, the advisability of executing this Settlement Agreement and the advisability of making the settlement provided for in this Settlement Agreement and the documents executed in connection herewith with, such independent attorneys, accountants, tax advisors, business advisors and other persons as it may wish, (c) has entered into this Settlement Agreement and executed and delivered all documents in connection herewith of its, his, or her own free will and accord and without threat, duress or other coercion of any kind by a Party or any person, (d) in executing this Settlement Agreement, and in making the settlement provided for in this Settlement Agreement, has not relied upon any statement, representation or promise of a Party (or any officer, agent, employee or representative thereof) not contained in this Settlement Agreement, and (e) has made such investigation of the facts pertaining to this Settlement Agreement and of all the matters pertaining thereto as it deems necessary.

**IN WITNESS WHEREOF**, the Parties have executed this Settlement Agreement as of the date last signed below.

Doc ID: 2a12dba7277259538f689a97d2a3017ab9d46623

**ALPINEBAY INC.**

By: _William Ho_

Name: William Ho

Title: General Manager

Date: 09 / 03 / 2025

**INDIVIDUAL PRINCIPALS:**

Anne Xiu Ying Ho

Date: 09 / 03 / 2025

William Huor Lam

Date: 09 / 03 / 2025

William Ho

Date: 09 / 03 / 2025

**PROFORM FINISHING PRODUCTS, LLC**

By: _Laura Budzich_ — DocuSigned by: 6C89ADB809B2443...

Name: Laura C. Budzichowski

Title:   Vice President and Secretary

Date: 9/4/2025

**GOLD BOND BUILDING PRODUCTS, LLC**

By: _Laura Budzich_ — DocuSigned by: 6C89ADB809B2443...

Name: Laura C. Budzichowski

Title:   Vice President and Secretary

Date: 9/4/2025

Doc ID: 2a12dba7277259538f689a97d2a3017ab9d46623

Docusign Envelope ID: AF20BD25-57B6-4B65-B0F3-1F919628A596

**EXHIBIT A**

**PERMANENT INJUNCTION**

Doc ID: 2a12dba7277259538f689a97d2a3017ab9d46623

Docusign Envelope ID: AF20BD25-5796-4B65-B0F3-1F919628A596

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ProForm Finishing Products, LLC f/k/a New NGC, Inc. d/b/a National Gypsum Company and Gold Bond Building Products, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 19-cv-03978 |
| v. | ) ) | Judge John F. Kness |
| Alpinebay, Inc., | ) ) | Magistrate Judge Gabriel A. Fuentes |
| Defendant. | ) ) | |

### STIPULATED PERMANENT INJUNCTION AND FINAL JUDGMENT

Plaintiffs ProForm Finishing Products, LLC f/k/a New NGC, Inc. d/b/a National Gypsum Company and Gold Bond Building Products, LLC (collectively, "National Gypsum") filed this action against Defendant Alpinebay, Inc. ("Alpinebay") alleging infringement of their trademark rights in the color purple and the word PURPLE under 15 U.S.C. § 1114 (Count I), 15 U.S.C. § 1125 (Count II), common law (Count III), the Illinois Consumer Fraud and Deceptive Business Practices Act ("CFA"), 815 ILCS 505/1 (Count IV), and the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), 815 ILCS 510/1 (Count V). Dkt. 1. National Gypsum further sought cancellation of U.S. Reg. No. 4,778,204 for PURPLEGARD owned by Alpinebay (Count VI). On May 23, 2023, following a six-day jury trial, the jury returned a verdict in favor of National Gypsum on all claims and issues, finding that (1) Alpinebay willfully infringed National Gypsum's purple color and PURPLE word trademark rights (Counts I-III), (2) $5,500,000 of Alpinebay's profits should be awarded to National Gypsum, (3) Alpinebay willfully committed violations of the CFA and UDTPA (Counts IV-V), and (4) Alpinebay's trademark registration for PURPLEGARD should be cancelled (Count VI). Dkt. 227.

Doc ID: 2a12dba7277259538f689a97d2a3017ab9d46623

National Gypsum and Alpinebay (collectively herein, the "Parties") have stipulated and agreed to entry of this Stipulated Permanent Injunction and Final Judgment pursuant to the Confidential Settlement and Release Agreement (the "Settlement Agreement") entered into by the Parties. The Parties have approved the substance and form of this Stipulated Permanent Injunction, and based on the Parties' Settlement Agreement and for good cause shown, IT IS HEREBY ORDERED as follows:

## PERMANENT INJUNCTION ORDER

1.    Beginning on February 2, 2024, Defendant Alpinebay, Inc. and its officers, agents, servants, employees and attorneys, and all other persons who are in active concert or participation with any of the foregoing, are hereby permanently enjoined and restrained from:

a.    using, or inducing or enabling others to use, the color purple, in any shade, or the word "PURPLE", in any format, case or spelling, on or in connection with the sale, offering for sale, distribution, or advertising of any building product in the United States or its territories;

b.    committing any acts, or inducing or enabling others to commit any acts, calculated to cause consumers in the United States or its territories to believe that Alpinebay's products are sold under the authorization, control or supervision of National Gypsum, or are sponsored by, approved by, or otherwise connected or associated with National Gypsum;

2.    Beginning on February 2, 2024, Alpinebay and its officers, agents, servants, employees and attorneys, and all other persons who are in active concert or participation with any of the foregoing, shall immediately and permanently cease use of all marketing, promotional, and other materials (whether physical or electronic) bearing the color purple, in any shade, or the word "PURPLE", in any format, case or spelling, as, or as part of, a trademark, trade name, label, or

2

Doc ID: 2a12dba7277259538f689a97d2a3017ab9d46623

product name, description or designation, in or intentionally directed to the United States or its territories.

3.      Alpinebay shall, within ten (10) days of February 2, 2024, destroy or have destroyed all matter in its possession or under its control (including product inventory, packaging, advertising materials (including brochures), and any other physical items) on which the color purple, in any shade, or the word "PURPLE", in any format, case or spelling, appears. Alpinebay must certify to the Court and National Gypsum, within ten (10) days of February 2, 2024, that such materials have been destroyed or transferred for destruction, including identification of such third party that will destroy such materials, if applicable.

4.      No appeals shall be taken from this Stipulated Permanent Injunction and Final Judgment, and the parties waive all rights to appeal. This Court expressly retains jurisdiction over this matter to enforce any violation of the terms of this Stipulated Permanent Injunction and Final Judgment by Defendant.

5.      This is a final judgment. Subject to this Court's limited retention of jurisdiction as set forth above, all claims filed in this action shall be dismissed without prejudice. Each of the Parties shall bear its own costs and attorneys' fees.

6.      The dismissal without prejudice will automatically convert to a dismissal with prejudice without further order of the Court on February 16, 2024, unless, on that date, a motion to reinstate the case, a motion to enforce the Settlement Agreement, or a motion for additional time to file a motion to reinstate or a motion to enforce the Settlement Agreement is pending before the Court.

3

SO ORDERED in No. 19-cv-03978.

Date: September 15, 2023

JOHN F. KNESS
United States District Judge

Doc ID: 2a12dba7277259538f689a97d2a3017ab9d46623

**EXHIBIT B**

**CORPORATE CONSENT JUDGMENT**

Doc ID: 2a12dba7277259538f689a97d2a3017ab9d46623

**THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ProForm Finishing Products, LLC f/k/a New NGC, Inc. d/b/a National Gypsum Company and Gold Bond Building Products, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:19-CV-03978 |
| v. | ) ) | Judge John F. Kness |
| Alpinebay, Inc., | ) ) | Mag. Judge Gabriel A. Fuentes |
| Defendant. | ) ) ) ) | |

**CONSENT JUDGMENT**

Defendant Alpinebay, Inc. ("Alpinebay") HEREBY CONFESSES JUDGMENT in favor of Plaintiffs ProForm Finishing Products, LLC f/k/a New NGC, Inc. d/b/a National Gypsum Company and Gold Bond Building Products, LLC (collectively, "National Gypsum"), in the sum of FOUR MILLION AND ONE HUNDRED THOUSAND U.S. DOLLARS ($4,100,000.00). In support of this Consent Judgment, Alpinebay verifies as follows:

1. Plaintiffs ProForm Finishing Products, LLC and Gold Bond Building Products, LLC are limited liability companies organized and existing under the laws of Delaware.

2. Defendant Alpinebay is a California corporation. Alpinebay consents to the Court's jurisdiction over the Parties and the subject matter of this action, and consents to the filing of this Consent Judgment on the conditions described herein.

3. Pursuant to Section 2 of the Settlement and Release Agreement dated September 3, 2025 (the "Settlement Agreement"), Alpinebay has agreed to pay National Gypsum an initial payment of four hundred thousand U.S. dollars ($400,000.00) within sixty (60) days of the entry of an order approving the Settlement Agreement in Bankruptcy Case No. 9:24-bk-11386-RC (the "Bankruptcy Case"). Time is of the essence with respect to Alpinebay's payment obligations under the Settlement Agreement.

4. Pursuant to Section 3 of the Settlement Agreement, Alpinebay has also agreed to be bound by the Stipulated Permanent Injunction entered in this case, *see* Dkt. 249, relating to its use of the color purple in any shade, or the word "PURPLE" in any format, case, or spelling, on or in connection with the sale, offering for sale, distribution, or advertising of any building product in the United States or its territories.

5. Pursuant to the Settlement Agreement, the Parties agree that upon any untimely or insufficient payment of any amounts owed by Alpinebay under Section 2 of the Settlement Agreement and/or any violation by Alpinebay of Section 3 of the Settlement Agreement, National

**Page of 1 of 3**

Doc ID: 2a12dba7277259538f689a97d2a3017ab9d46623

Gypsum may:  (a) without further notice, immediately record this Consent Judgment as to Alpinebay in the amount of $4,100,000.00, plus interest at the legal rate after the date of filing of this Consent Judgment, and (b) immediately execute upon or otherwise enforce this Consent Judgment until paid, less any payments Alpinebay has made to National Gypsum pursuant to the Settlement Agreement.  National Gypsum may establish the amount of any payments made to National Gypsum by an affidavit of National Gypsum or National Gypsum's counsel.

6.    Alpinebay stipulates and consents to entry of this Consent Judgment and related execution efforts in this Court and/or any county or jurisdiction where Alpinebay resides, has assets or business interests, or where real or personal property owned by Alpinebay may be found.

7.    This Consent Judgment is entered into willingly, voluntarily, and unconditionally.

8.    Alpinebay hereby waives service of process regarding the filing or recording of this Consent Judgment, and submits to the procedural and substantive laws of this Court for the purpose of this Consent Judgment.

9.    National Gypsum's acceptance of partial payments made by Alpinebay shall not act as a waiver of National Gypsum's rights or remedies pursuant to this Consent Judgment and shall only entitle Alpinebay to credits against the full amount listed herein.

10.    No course of dealing between National Gypsum, Alpinebay, Alpinebay's principals or any delay or omission of National Gypsum in exercising any right or remedy arising from Alpinebay's or its principals' default, shall be construed to be a waiver by National Gypsum of a default by Alpinebay or its principals.

11.    In the event the executed original of this Consent Judgment is lost, destroyed, damaged, or otherwise unavailable for filing, Alpinebay authorizes National Gypsum or National Gypsum's attorney to file with the Court a copy of the executed and notarized original of this Consent Judgment.

[*Remainder of page left intentionally blank, signature page follows*]

**Page of 2 of 3**

Doc ID: 2a12dba7277259538f689a97d2a3017ab9d46623

DATED as of the 3rd day of <u>September</u>, 2025.

Alpinebay, Inc.

By: _____

Name: <u>Anne Ho</u>

Title: <u>Owner</u>

[*Signature Page of Consent Judgment*]

**Page of 3 of 3**

Docusign Envelope ID: AF20BD25-57B6-4B65-B0F3-1F919628A596

# EXHIBIT C

## INDIVIDUAL CONSENT JUDGMENT (LAM)

Doc ID: 2a12dba7277259538f689a97d2a3017ab9d46623

## THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| ProForm Finishing Products, LLC f/k/a New NGC, Inc. d/b/a National Gypsum Company and Gold Bond Building Products, LLC, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) ) | Case No. 1:19-CV-03978 |
| | ) | |
| v. | ) ) | Judge John F. Kness |
| | ) | |
| Alpinebay, Inc., Anne Xiu Ying Ho, William Huor Lam, and William Ho, | ) ) ) | Mag. Judge Gabriel A. Fuentes |
| | ) | |
| Defendants. | ) ) | |

**CONSENT JUDGMENT**

Defendant William Huor Lam ("Lam") HEREBY CONFESSES JUDGMENT in favor of Plaintiffs ProForm Finishing Products, LLC f/k/a New NGC, Inc. d/b/a National Gypsum Company and Gold Bond Building Products, LLC (collectively, "National Gypsum"), in the sum of ONE MILLION U.S. DOLLARS ($1,000,000.00). In support of this Consent Judgment, Lam verifies as follows:

1. Plaintiffs ProForm Finishing Products, LLC and Gold Bond Building Products, LLC are limited liability companies organized and existing under the laws of Delaware.

2. Defendant Alpinebay is a California corporation. Defendant Lam is a principal of Alpinebay. Lam consents to the Court's jurisdiction over the Parties and the subject matter of this action, and consents to the filing of this Consent Judgment on the conditions described herein.

3. Pursuant to Section 2 of the Settlement and Release Agreement dated September 3, 2025 (the "Settlement Agreement"), Alpinebay agreed to pay National Gypsum an initial payment of four hundred thousand U.S. dollars ($400,000.00) within sixty (60) days of the entry of an order approving the Settlement Agreement in Bankruptcy Case No. 9:24-bk-11386-RC (the "Bankruptcy Case"). Time is of the essence with respect to Alpinebay's payment obligations under the Settlement Agreement.

4. Pursuant to Section 3 of the Settlement Agreement, Lam has also agreed to be bound by the Stipulated Permanent Injunction entered in this case, *see* Dkt. 249, relating to the use of the color purple in any shade, or the word "PURPLE" in any format, case, or spelling, on or in connection with the sale, offering for sale, distribution, or advertising of any building product in the United States or its territories.

5. In Section 5 of the Settlement Agreement, Lam agreed to be jointly and severally liable for any violation of the Stipulated Permanent Injunction by Alpinebay's other principals

**Page of 1 of 3**

until Lam made a "Complete Departure" from Alpinebay—meaning cessation of all direct or indirect employment, equity holdings, consulting, independent contracting, or other business relationships with Alpinebay.  Lam further agreed to remain jointly and severally liable for the twenty-four (24) month period following such Complete Departure; thereafter, Lam is liable for violations of the Permanent Injunction caused by his own individual conduct.

6. The Parties agree that upon any violation of Section 3 of the Settlement Agreement that is not cured within the applicable period, National Gypsum may, according to the scope of liability set forth in Section 5 of the Settlement Agreement: (a) without further notice, immediately record this Consent Judgment as to Lam in the amount of $1,000,000.00, plus interest at the legal rate after the date of filing of this Consent Judgment, and (b) immediately execute upon or otherwise enforce this Consent Judgment until paid.

7. Lam stipulates and consents to his joinder to this action pursuant to Rules 19 and 20 of the Federal Rules of Civil Procedure.  Lam further stipulates and consents to entry of this Consent Judgment and related execution efforts in this Court and/or any county or jurisdiction where Lam resides, has assets or business interests, or where real or personal property owned by Lam may be found.

8. This Consent Judgment is entered into willingly, voluntarily, and unconditionally.

9. Lam hereby waives service of process regarding the filing or recording of this Consent Judgment, and submits to the procedural and substantive laws of this Court for the purpose of this Consent Judgment.

10. National Gypsum's acceptance of partial payments made by Alpinebay shall not act as a waiver of National Gypsum's rights or remedies pursuant to this Consent Judgment.

11. No course of dealing between National Gypsum, Alpinebay, Alpinebay's principals or any delay or omission of National Gypsum in exercising any right or remedy arising from Alpinebay's or its principals' default, shall be construed to be a waiver by National Gypsum of a default by Alpinebay or its principals.

12. In the event the executed original of this Consent Judgment is lost, destroyed, damaged, or otherwise unavailable for filing, Lam authorizes National Gypsum or National Gypsum's attorney to file with the Court a copy of the executed and notarized original of this Consent Judgment.

*[Remainder of page left intentionally blank, signature page follows]*

**Page of 2 of 3**

DATED as of the 3rd day of September, 2025.

William Huor Lam

By: _William Lam_

Name: _William Hour Lam_

Title: _president_

[*Signature Page of Consent Judgment*]

**Page of 3 of 3**

Docusign Envelope ID: AF20BD25-57B6-4B65-B0F3-1E919628A596

## EXHIBIT D

## INDIVIDUAL CONSENT JUDGMENT (ANNE HO)

Doc ID: 2a12dba7277259538f689a97d2a3017ab9d46623

**THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ProForm Finishing Products, LLC f/k/a New NGC, Inc. d/b/a National Gypsum Company and Gold Bond Building Products, LLC, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) ) | Case No. 1:19-CV-03978 |
| | ) | |
| v. | ) ) | Judge John F. Kness |
| | ) | Mag. Judge Gabriel A. Fuentes |
| Alpinebay, Inc., Anne Xiu Ying Ho, William Huor Lam, and William Ho, | ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

**CONSENT JUDGMENT**

Defendant Anne Xiu Ying Ho ("Anne Ho") HEREBY CONFESSES JUDGMENT in favor of Plaintiffs ProForm Finishing Products, LLC f/k/a New NGC, Inc. d/b/a National Gypsum Company and Gold Bond Building Products, LLC (collectively, "National Gypsum"), in the sum of ONE MILLION U.S. DOLLARS ($1,000,000.00).  In support of this Consent Judgment, Anne Ho verifies as follows:

1.  Plaintiffs ProForm Finishing Products, LLC and Gold Bond Building Products, LLC are limited liability companies organized and existing under the laws of Delaware.

2.  Defendant Alpinebay is a California corporation.  Defendant Anne Ho is a principal of Alpinebay.  Anne Ho consents to the Court's jurisdiction over the Parties and the subject matter of this action, and consents to the filing of this Consent Judgment on the conditions described herein.

3.  Pursuant to Section 2 of a Confidential Settlement and Release Agreement dated September 3, 2025 (the "Settlement Agreement"), Alpinebay agreed to pay National Gypsum an initial payment of four hundred thousand U.S. dollars ($400,000.00) within sixty (60) days of the entry of an order approving the Settlement Agreement in Bankruptcy Case No. 9:24-bk-11386-RC (the "Bankruptcy Case").  Time is of the essence with respect to Alpinebay's payment obligations under the Settlement Agreement.

4.  Pursuant to Section 3 of the Settlement Agreement, Anne Ho has also agreed to be bound by the Stipulated Permanent Injunction entered in this case, *see* Dkt. 249, relating to the use of the color purple in any shade, or the word "PURPLE" in any format, case, or spelling, on or in connection with the sale, offering for sale, distribution, or advertising of any building product in the United States or its territories.

**Page of 1 of 3**

Doc ID: 2a12dba7277259538f689a97d2a3017ab9d46623

5.      In Section 5 of the Settlement Agreement, Anne Ho agreed to be jointly and severally liable for any violation of the Stipulated Permanent Injunction by Alpinebay's other principals until Anne Ho made a "Complete Departure" from Alpinebay—meaning meaning cessation of all direct or indirect employment, equity holdings, consulting, independent contracting, or other business relationships with Alpinebay.  Anne Ho further agreed to remain jointly and severally liable for the twenty-four (24) month period following such Complete Departure; thereafter, Anne Ho is liable for violations of the Permanent Injunction caused by her own individual conduct.

6.      The Parties agree that upon any violation of Section 3 of the Settlement Agreement that is not cured within the applicable period, National Gypsum may, according to the scope of liability set forth in Section 5 of the Settlement Agreement:  (a) without further notice, immediately record this Consent Judgment as to Anne Ho in the amount of $1,000,000.00, plus interest at the legal rate after the date of filing of this Consent Judgment, and (b) immediately execute upon or otherwise enforce this Consent Judgment until paid.

7.      Anne Ho stipulates and consents to her joinder to this action pursuant to Rules 19 and 20 of the Federal Rules of Civil Procedure.  Anne Ho further stipulates and consents to entry of this Consent Judgment and related execution efforts in this Court and/or any county or jurisdiction where Anne Ho resides, has assets or business interests, or where real or personal property owned by Anne Ho may be found.

8.      This Consent Judgment is entered into willingly, voluntarily, and unconditionally.

9.      Anne Ho hereby waives service of process regarding the filing or recording of this Consent Judgment, and submits to the procedural and substantive laws of this Court for the purpose of this Consent Judgment.

10.      National Gypsum's acceptance of partial payments made by Alpinebay shall not act as a waiver of National Gypsum's rights or remedies pursuant to this Consent Judgment.

11.      No course of dealing between National Gypsum, Alpinebay, Alpinebay's principals or any delay or omission of National Gypsum in exercising any right or remedy arising from Alpinebay's or its principals' default, shall be construed to be a waiver by National Gypsum of a default by Alpinebay or its principals.

12.      In the event the executed original of this Consent Judgment is lost, destroyed, damaged, or otherwise unavailable for filing, Anne Ho authorizes National Gypsum or National Gypsum's attorney to file with the Court a copy of the executed and notarized original of this Consent Judgment.

*[Remainder of page left intentionally blank, signature page follows]*

**Page of 2 of 3**

Doc ID: 2a12dba7277259538f689a97d2a3017ab9d46623

DATED as of the 3rd day of September, 2025.

Anne Xiu Ying Ho

By: _____

Name:  Anne Ho_____

Title:  Owner_____

[*Signature Page of Consent Judgment*]

**Page of 3 of 3**

Doc ID: 2a12dba7277259538f689a97d2a3017ab9d46623

Docusign Envelope ID: AF20BD25-5796-4B65-B0F3-1F919628A596

**EXHIBIT E**

**INDIVIDUAL CONSENT JUDGMENT (WILLIAM HO)**

Doc ID: 2a12dba7277259538f689a97d2a3017ab9d46623

# THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| ProForm Finishing Products, LLC f/k/a New NGC, Inc. d/b/a National Gypsum Company and Gold Bond Building Products, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:19-CV-03978 |
| v. | ) ) | Judge John F. Kness |
| Alpinebay, Inc., Anne Xiu Ying Ho, William Huor Lam, and William Ho, | ) ) ) | Mag. Judge Gabriel A. Fuentes |
| Defendants. | ) ) ) | |

## CONSENT JUDGMENT

Defendant William Ho HEREBY CONFESSES JUDGMENT in favor of Plaintiffs ProForm Finishing Products, LLC f/k/a New NGC, Inc. d/b/a National Gypsum Company and Gold Bond Building Products, LLC (collectively, "National Gypsum"), in the sum of ONE MILLION U.S. DOLLARS ($1,000,000.00). In support of this Consent Judgment, William Ho verifies as follows:

1. Plaintiffs ProForm Finishing Products, LLC and Gold Bond Building Products, LLC are limited liability companies organized and existing under the laws of Delaware.

2. Defendant Alpinebay is a California corporation. Defendant William Ho is a principal of Alpinebay. William Ho consents to the Court's jurisdiction over the Parties and the subject matter of this action, and consents to the filing of this Consent Judgment on the conditions described herein.

3. Pursuant to Section 2 of the Settlement and Release Agreement dated September 3, 2025 (the "Settlement Agreement"), Alpinebay agreed to pay National Gypsum an initial payment of four hundred thousand U.S. dollars ($400,000.00) within sixty (60) days of the entry of an order approving the Settlement Agreement in Bankruptcy Case No. 9:24-bk-11386-RC (the "Bankruptcy Case"). Time is of the essence with respect to Alpinebay's payment obligations under the Settlement Agreement.

4. Pursuant to Section 3 of the Settlement Agreement, William Ho has also agreed to be bound by the Stipulated Permanent Injunction entered in this case, *see* Dkt. 249, relating to the use of the color purple in any shade, or the word "PURPLE" in any format, case, or spelling, on or in connection with the sale, offering for sale, distribution, or advertising of any building product in the United States or its territories.

**Page of 1 of 3**

5.      In Section 5 of the Settlement Agreement, William Ho agreed to be jointly and severally liable for any violation of the Stipulated Permanent Injunction by Alpinebay's other principals until William Ho made a "Complete Departure" from Alpinebay—meaning meaning cessation of all direct or indirect employment, equity holdings, consulting, independent contracting, or other business relationships with Alpinebay.  William Ho further agreed to remain jointly and severally liable for the twenty-four (24) month period following such Complete Departure; thereafter, William Ho is liable for violations of the Permanent Injunction caused by his own individual conduct.

6.      The Parties agree that upon any violation of Section 3 of the Settlement Agreement that is not cured within the applicable period, National Gypsum may, according to the scope of liability set forth in Section 5 of the Settlement Agreement:  (a) without further notice, immediately record this Consent Judgment as to William Ho in the amount of $1,000,000.00, plus interest at the legal rate after the date of filing of this Consent Judgment, and (b) immediately execute upon or otherwise enforce this Consent Judgment until paid.

7.      William Ho stipulates and consents to his joinder to this action pursuant to Rules 19 and 20 of the Federal Rules of Civil Procedure.  William Ho further stipulates and consents to entry of this Consent Judgment and related execution efforts in this Court and/or any county or jurisdiction where William Ho resides, has assets or business interests, or where real or personal property owned by William Ho may be found.

8.      This Consent Judgment is entered into willingly, voluntarily, and unconditionally.

9.      William Ho hereby waives service of process regarding the filing or recording of this Consent Judgment, and submits to the procedural and substantive laws of this Court for the purpose of this Consent Judgment.

10.     National Gypsum's acceptance of partial payments made by Alpinebay shall not act as a waiver of National Gypsum's rights or remedies pursuant to this Consent Judgment.

11.     No course of dealing between National Gypsum, Alpinebay, Alpinebay's principals or any delay or omission of National Gypsum in exercising any right or remedy arising from Alpinebay's or its principals' default, shall be construed to be a waiver by National Gypsum of a default by Alpinebay or its principals.

12.     In the event the executed original of this Consent Judgment is lost, destroyed, damaged, or otherwise unavailable for filing, William Ho authorizes National Gypsum or National Gypsum's attorney to file with the Court a copy of the executed and notarized original of this Consent Judgment.

*[Remainder of page left intentionally blank, signature page follows]*

**Page of 2 of 3**

Docusign Envelope ID: AF20BD25-57B6-4B65-B0F3-1E919628A596

DATED as of the 3rd day of September 2025.

William Ho

By: _William Ho_____

Name: Will Ho_____

Title: General manager_____

[*Signature Page of Consent Judgment*]

Doc ID: 2a12dba7277259538f689a97d2a3017ab9d46623

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**4158 14th Riverside St., Riverside, CA 92501**

A true and correct copy of the foregoing document entitled (*specify*): NOTICE OF MOTION AND MOTION FOR
ORDER APPROVING COMPROMISE WITH PROFORM FINISHING PRODUCTS, LLC;
MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF WILLIAM HO IN SUPPORT
THEREOF be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d);
and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **9/4/2025**
I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following
persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Brian David Fittipaldi    brian.fittipaldi@usdoj.gov**
- **Alan Craig Hochheiser    ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com**
- **Marshall J Hogan    mhogan@swlaw.com, fcardenas@swlaw.com**
- **Christopher J. Langley    chris@slclawoffice.com,
  john@slclawoffice.com;langleycr75251@notify.bestcase.com**
- **Wendy A Locke    ecfcacb@aldridgepite.com, wlocke@ecf.inforuptcy.com**
- **Anne C Manalili    anne.manalili@sba.gov**
- **Allison C. Murray    acmurray@swlaw.com, kcollins@swlaw.com**
- **Andrew Nazar    anazar@polsinelli.com, tbackus@polsinelli.com;docketing@polsinelli.com**
- **Randye B Soref    rsoref@polsinelli.com, ccripe@polsinelli.com;ladocketing@polsinelli.com**
- **Andrew W.J. Tarr    atarr@robinsonbradshaw.com,
  docketing@robinsonbradshaw.com,kwells@robinsonbradshaw.com**
- **United States Trustee (ND)    ustpregion16.nd.ecf@usdoj.gov**

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On **9/4/2025** I served the following persons and/or entities at the last known addresses in this bankruptcy case or
adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class,
postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will
be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **9/4/2025** I served the
following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 9/4/2025 | John Martinez | /s/ John Martinez |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                 **F 9013-3.1.PROOF.SERVICE**

Label Matrix for local noticing
0973-9
Case 9:24-bk-11386-RC
Central District of California
Santa Barbara
Wed Sep  3 16:51:13 PDT 2025

Alpinebay Inc
7 W. Figueria Street. Ste 300
Santa Barbara, CA 93101-3189

AmTrust North America, Inc. on behalf of Seq
c/o Maurice Wutscher LLP
23611 Chagrin Blvd
Suite 207
Beachwood, OH 44122-5540

County Assessor
County Government Center, Room 100
San Luis Obispo, CA 93408-0001

County Tax Collector
P.O. Box 357
Santa Barbara, CA 93102-0357

Employment Development Dept.
Bankruptcy Group MIC 92E
P.O. Box 826880
Sacramento, CA 94280-0001

(p)FIRST BUSINESS BANK
401 CHARMANY DR
MADISON WI 53719-1272

Franchise Tax Board
Bankruptcy Section MS: A-340
P.O. Box 2952
Sacramento, CA 95812-2952

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

Securities & Exchange Commission
444 South Flower St., Suite 900
Los Angeles, CA 90071-2934

Shioda Langley & Chang LLP
1063 E Las Tunas Drive
San Gabriel, CA 91776-1632

(p)U S  SMALL BUSINESS ADMINISTRATION
312 N SPRING ST 5TH FLOOR
LOS ANGELES CA 90012-4701

Northern Division
1415 State Street,
Santa Barbara, CA 93101-2511

Franchise Tax Board
PIT Bankruptcy MS: A-340
PO Box 2952
Sacramento, CA 95812-2952

JPMorgan Chase Bank, N.A. c/o Chris Peterson
P.O. Box 29550, Mail Code AZ1-5200
Phoenix, AZ 85038-9550

JPMorgan Chase Bank, NA
Collateral Mgmt Small Business
PO Box 33035
Louisville, KY 40232-3035

National Gypsum Company
2001 Rexford Road
Charlotte, NC 28211-3498

US Small Business Administration
1545 Hawkins Blvd. Ste 202
El Paso, TX 79925-2654

United States Trustee (ND)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017-3560

Chris Hamilton
Arxis Financial, Inc.
2468 Tapo Canyon Rd
Simi Valley, CA 93063-2361

Christopher J. Langley
Shioda Langley & Chang LLP
1063 E. Las Tunas Dr.
San Gabriel, CA 91776-1632


The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).


First Business Bank
11141 Overbrook Road
Suite 103
Leawood, KS 66211

U.S. Small Business Administration
Office of General Counsel
312 N Spring St, 5th Floor
Attn: Anne C. Manalili
Los Angeles, CA 90012 United States

(d)First Business Bank
401 Charmany Drive
Madison, WI 53719

(d)U.S. Small Business Administration
Office of General Counsel (ACM)
312 North Spring Street, Floor 5
Los Angeles, CA 90012

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Courtesy NEF                          (u)Gold Bond Building Products, LLC              (u)ProForm Finishing Products, LLC d/b/a Nati

(d)INTERNAL REVENUE SERVICE              End of Label Matrix
PO BOX 7346                              Mailable recipients    20
Philadelphia, PA 19101-7346             Bypassed recipients     4
                                        Total                  24